UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID A. SCHLEMM,

           Plaintiff,

v.                                                       Case No. 19-cv-266-pp

MICHAEL BAENEN, MR. PIZZALA,
MR. VAN LANEN, MICHAEL DONOVAN,
and MICHAEL MOHR,

           Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

      Plaintiff David A. Schlemm, a prisoner at Columbia Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to address his requests for medical care regarding his knee injury. Dkt. No. 1. He also moved for leave to proceed without prepaying the filing fee. Dkt. No. 2. On April 23, 2019, he amended his complaint. Dkt. No. 12. Because the original complaint had not yet been screened or served on the defendants, the court will treat the amended complaint as the operative complaint. This order resolves the plaintiff's motion and screens the amended complaint.

I.     **Motion to Proceed without Prepaying the Filing Fee**

      The Prison Litigation Reform Act (PLRA) gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee,

1

as long as they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee.

On April 8, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $1.52. Dkt. No. 11. The court received that fee on May 1, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the fee over time in the manner explained at the end of this order.

**II.　Screening the Complaint**

　A.　Standard

The law requires the court to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The

complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow the principles in Twombly, by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts in the Amended Complaint

The plaintiff begins the facts section of his amended complaint directing the court to documents he attaches to his complaint. Dkt. No. 12. These documents include:

3

- Conduct report #1478504 issued to the plaintiff on December 21, 2012;
- The report from the January 17, 2013 disciplinary hearing on conduct report #1478504;
- Wisconsin Department of Corrections (WDOC) Documents
    - Rules on filing inmate grievances.
    - Rules on Inmate Complaints Regarding Staff Misconduct
    - Work Rules
    - Religious Property Chart;
- The plaintiff's inmate complaint appeal decisions in GBCI-2012-3501 and GBCI 2011-19255; and
- The plaintiff's inmate complaints and decisions in GBCI-2012-17001; GBCI-2012-17059; GBCI-2008-336; GBCI 2008-24389; GBCI-2011-18412; GBCI-2011-18972; GBCI-2011-20881; GBCI-2012-21485; GBCI-2012-23276; GBCI-2012-24357; and GBCI-2013-860.

Id., ¶¶11-31; Dkt. No. 12-1 at 1-123.

The plaintiff explains that in 2011, he had initiated a lawsuit, Schlemm v. Litscher, Case No. 11-cv-272-wmc (W.D. Wis.). Dkt. No. 12 at ¶34. In that case, the plaintiff had claimed that the prison officials harbored a "systematic disregard for his and other Native American prisoners' religious liberty;" he had challenged restrictions on his ability to access a headband, venison and fry bread for the annual Ghost Feast. Id. He notes that, during the trial in that case, Correctional Officer Richard Retzlaff (not a defendant) testified on the plaintiff's behalf that he had issued to the plaintiff a "bag of cedar, sage and sweet grass" after getting approval to do so from Chaplain Donovan. Id. at ¶33. The plaintiff attached a transcript from the case highlighting the officer's testimony. Dkt. No. 12-1 at 125-127.

The plaintiff alleges that Pizzala, Vanlanen and Donovan were motivated to retaliate "stating that the plaintiff stoled [sic] this sage from the chapel and

4

improperly stored it from Inmate Group Complaint/Complaints filed on C/O Vanlanen, Chaplain Donovan and WDOC officials." Id. at ¶35. The plaintiff asserts that Pizzala, Sergeant Vanlanen and Chaplain Donovan retaliated against him by issuing conduct report #1478504, which accused the plaintiff of stealing sage and improperly storing it. Id. at ¶34. The plaintiff attached the conduct report—it is dated December 20, 2012 and signed by Pizzala; it states that during a random cell search, Pizzala found a bag of green, leafy substance that looked like cedar or sage, that he took the substance to Vanlanen and Vanlanen told him to take the bag to the chapel and that Chaplain Donovan told Pizzala that the substance was sage and had been stolen from the chapel or during sweat lodge. Dkt. No. 12-1 at 1-2.

The plaintiff alleges that during the January 17, 2013 hearing on conduct report #1478504, Retzlaff testified that he had given the plaintiff the sage; another inmate stated the he didn't "believe [the plaintiff] stoled [*sic*] any medicines from the group;" and the plaintiff "'showed property slips showing he had sage for approximately ten years.'" Dkt. No. 12 at ¶¶36-38. He says that the hearing officer dismissed conduct report #1478504. Id. at ¶39.

The plaintiff alleges that on December 27, 2012—about a week after Pizzala filed the conduct report—the plaintiff filed an inmate grievance in which he wrote that "the correctional officer Pizzala headed by Sergeant Vanlanen wrote a false misconduct report after inmate announced his intention to file grievances against officer." Id. at ¶46. The plaintiff attached a copy of that

5

grievance to the amended complaint. Dkt. No. 12-1 at 128. The court cannot find among the documents the plaintiff filed any complaint examiner's response to that grievance.

The plaintiff asserts that on January 23, 2013, he filed inmate grievance GBCI-2013-1898 "regarding Correctional Officer Pizzala headed by Sergeant Vanlanen wrote a false Conduct Report #1478504—brought in retaliation for filing grievances." Dkt. No. 12 at ¶47. The plaintiff's attached exhibits show that inmate complaint examiner Mohr rejected the grievance on January 28, 2013 because the plaintiff did not allege sufficient facts. Dkt. No. 12-1 at 130. The plaintiff sought review of the dismissal of his grievance, id. at 131; on February 21, 2013, Warden Baenen concluded that Mohr appropriately rejected the grievance, id. at 132.

The plaintiff asserts that on the same date—January 23, 2013—he also "filed Inmate Complaint GBCI-2013-2078 regarding Chaplain Donovan false statement in Conduct Report #1478504 is brought in retaliation for filing grievances against him." Dkt. No. 12 at ¶48. His attached exhibits show that Mohr rejected that complaint on January 29, 2013, again because the plaintiff failed to state sufficient facts. Dkt. No. 12-1 at 134. The plaintiff sought review of this dismissal, id. at 135, and on February 22, 2013, Warden Baenen concluded that Mohr had appropriately dismissed the grievance, id. at 136.

The plaintiff alleges that Inmate Complaint Examiner Michael Mohr retaliated against him by failing to properly investigate his inmate complaint

6

GBCI-2013-1898. Dkt. No. 12 at ¶¶40-41. He says that Mohr failed to interview the appropriate staff members and review institution records. Id. at ¶40. He alleges that Mohr could have requested additional information from the plaintiff or personally interviewed the plaintiff, but instead claimed that there was no evidence to support the plaintiff's claim that Pizzala wrote a false conduct report. Id. at ¶41. He states that Mohr rejected his complaint, saying that "[the plaintiff] makes the conclusory statement that officer Pizzala wrote a false conduct report. [The plaintiff] does not offer any evidence to support his contention. . . Noting if a conduct report is dismissed, the original conduct report is not kept." Id. The plaintiff references and attaches the inmate complaint rejection document, which further states, in part, that "[i]ssuance of a conduct report in and of itself does not constitute harassment. A conduct report is staff documentation of what is believed to be a possible rule violation." Dkt. No. 12-1 at 133.

The plaintiff also alleges that Mohr retaliated against him regarding inmate complaint GBCI-2013-2078 by failing to interview appropriate staff members and review institution records. Dkt. No. 12 at ¶42. He alleges that Mohr failed to investigate Chaplain Donovan's false statement that the plaintiff stole the sage from the chapel; the plaintiff says Mohr that rejected the complaint because "[the plaintiff] fails to state what was the false statement that was made by Chaplain Donovan thus forcing the complaint examinator [sic] to speculate what statement [the plaintiff] is referring." Id. at ¶43.

7

Case 2:19-cv-00266-PP-NJ    Filed 10/19/20    Page 7 of 14    Document 13

Finally, the plaintiff asserts that Warden Michael Baenen "knowingly overlook[ed] complaints GBCI-2013-1898 and GBCI-2013-2078 challenging misconduct report #1478504 that Pizzala, VanLanen and Donovan wrote out of retaliation." Id. at ¶44. He asserts that VanLanen and Mohr had a duty to uphold and enforce the DOC complaint procedures. Id. at ¶45.

The plaintiff seeks a declaration that his constitutional rights were violated by the defendants, an injunction prohibiting the defendants from taking further acts of retaliation and compensatory and punitive damages and costs. Id. at ¶¶53-58.

C. Analysis

The court begins by noting that some of the plaintiff's claims may be barred by the statute of limitations.

For claims brought under 42 U.S.C. §1983, the court borrows the limitations period and tolling rules applicable to personal-injury claims under state law. Devbrow v. Kalu, 705 F.3d 765, 767 (7th Cir. 2013) (citing Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012)). In Wisconsin, "the applicable residual statute for § 1983 claims is Wis. Stat. § 893.53. *Hemberger v. Bitzer,* 216 Wis. 2d 509, 519 (1998) . . . ." D'acquisto v. Love, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020). At the time of the events described in the amended complaint, Wis. Stat. §893.53 provided for a six-year limitations period. Id. "Generally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the retaliatory act occurred."

Gekas v. Vasiliades, 814 F.3d 890, 894 (7th Cir. 2016) (citing Mosely v. Bd. of Educ. of City of Chi., 434 F.3d 527, 535 (7th Cir. 2006)).

The plaintiff filed this lawsuit on February 19, 2019. Dkt. No. 1. He alleges that Pizzala, VanLanen and Donovan retaliated against him on December 21, 2012—more than six years earlier. He alleges that defendant Mohr retaliated against him on January 28 and 29, 2013—also more than six years earlier.

Federal courts must borrow the tolling rules of the forum state. Johnson v. Rivera, 272 F.3d 519, 521 (7th Cir. 2001) (quoting Smith v. City of Chi. Heights, 951 F.2d 834, 839-40 (7th Cir. 1992)). Some state laws toll the limitations period while a prisoner pursues his administrative remedies; the court does not know whether Wisconsin does. At the screening stage, the court will not dismiss the plaintiff's claims against Pizzala, VanLanen, Donovan and Mohr as time-barred, but it notes its concerns.

To state a claim for First Amendment retaliation, a plaintiff must "show that he engaged in a protected First Amendment activity," must "show an adverse action was taken against him" and "must show his protected conduct was at least a motivating factor of the adverse action." Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (citing Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

9

The plaintiff appears to allege that Pizzala, VanLanen and Donovan retaliated against him for filing the 2011 lawsuit. He also implies that they retaliated against him because he'd previously filed grievances against them. Filing a lawsuit can constitute protected First Amendment activity, as can filing a grievance about conditions of confinement. See, *e.g.*, Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010). He alleges that Pizzala issued a conduct report against him, that Donovan made a false statement in support of that report and that VanLanen "headed" Pizzala in the issuance of the conduct report. The conduct he alleges that Pizzala and Donovan engaged in could fairly be considered adverse actions, and if the plaintiff is alleging that VanLanen authorized those adverse actions, a defendant can be held liable under §1983 if he "'know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what [he] might see.'" Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (quoting Jones v. City of Chi., 856 F.2d 985, 992-93 (7th Cir.1988)). Finally, the plaintiff has alleged that Pizzala, VanLanen and Donovan took these adverse actions (in VanLanen's case, authorized them) because of the plaintiff's exercise of his First Amendment rights in filing the lawsuit and the grievances. The court will allow the plaintiff to proceed on a retaliation claim against Pizzala, VanLanen and Donovan.

The plaintiff has not stated facts to support a First Amendment retaliation claim against Mohr or Baenen. A complaint examiner can be liable for a constitutional violation if he fails to perform his appointed tasks by, for

instance, "routinely sen[ding] each grievance to the shredder without reading it" or a complaint examiner "interven[ing] to prevent the medical unit from delivering needed care might be thought liable." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) (citations omitted). But "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007). The plaintiff alleges that Mohr rejected, and that Baenen confirmed the rejection of, the plaintiff's complaints against Pizzala, VanLanen and Donovan. This is not enough to state a claim for retaliation.

Even the plaintiff's claims that Mohr did not investigate correctly—did not interview the right people or look at the appropriate institution records—does not state a claim. The plaintiff's claims against Mohr and Baenen sound more like Eighth Amendment deliberate indifference than First Amendment retaliation, and "[a complaint examiner's] failure to realize the potential gravity of the situation does not amount to deliberate indifference." Greeno v. Daley, 414 F.3d 645, 657 (7th Cir. 2005). The court will dismiss Mohr and Baenen as defendants.

### III.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** Michael Mohr and Michael Baenen as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's amended complaint and this order to the Wisconsin Department of Justice for service on defendants Mr. Pizzala, Mr. VanLanen and Michael Donovan. The court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the **$348.48** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that under the Prisoner E-Filing Program, the plaintiff must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 19th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**